Toby FISH, and wife Patricia Gayle Fish, Appellants,

v.

William L. BANNISTER, and wife Nel Lucille Epperson Bannister, Appellees.

No. 04–87–00492–CV.

Court of Appeals of Texas, San Antonio.

Aug. 31, 1988.

Rehearing Denied Oct. 21, 1988.

---

Edwin H. White, Rocksprings, for appellants.

Gary C. Gilmer, Gilmer & Gilmer, Rocksprings, for appellees.

Before BUTTS, REEVES and CHAPA, JJ.

## OPINION

BUTTS, Justice.

This is a suit in trespass to try title of 178.52 acres of land. The Bannisters, William L. and Nel Lucille Epperson, plaintiffs below, claimed title to the land by adverse possession pursuant to the ten year statute of limitations. The trial court rendered judgment on a jury's verdict, awarding title and possession of the land to the Bannisters. Appellant, Patricia Gayle Fish, is record title owner of the land in dispute, acquiring it from her ancestor, T.B. Phillips.

Appellants and appellees are neighboring land owners in Edwards County. The fence separating the Bannister ranch from the Fish ranch was erected at some time prior to 1935 and remained in the same location for more than fifty years. The fence constitutes the middle two miles of a fence line that runs straight for four miles. The fence line has had the reputation of being the boundary line between the ranches now known as the Bannister ranch and the Fish ranch for more than fifty years.

The deeds of the parties reflect that the survey line separating their two properties is about 800 feet to the east of the fence enclosing the disputed 178.52 acres of land enclosed in the Bannister pasture.

Neither of the parties was aware of the fact that the record title land of Fish was enclosed in the Bannister's pasture until after 1975 when new survey results became known. Appellants were notified at that time.

Appellants raise sixteen points of error. First, the trial court's refusal to render a directed verdict was error because there was no evidence or insufficient evidence to warrant the submission of the case to the jury and because the affirmative finding favorable to appellant was against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. (Points one, two, and three). Second, the trial court erred in submitting question two to the jury because there was no evidence of doubt, uncertainty or dispute with respect to the location of the fence on the west line of the disputed tracts. (Point four).

Third, there is no evidence or insufficient evidence to support the jury's answer to question one which found that plaintiffs had adversely possessed the disputed land for ten years or more prior to December 18, 1980. In addition the jury's answer to question one is against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. (Points five, six and seven). Fourth, the trial court should have rendered judgment non obstante veredicto because there is no evidence or insufficient evidence to support the jury's answer to question one or alternatively the jury's answer to question one is against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. (Points eight, nine, and ten). Fifth, the trial court should have granted a new trial because there was no evidence or insufficient evidence to support the jury's response to question one or alternatively the jury's response to question one is against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. (Points eleven, twelve, and thirteen).

Sixth, the trial court should have granted a new trial because the jury's response to question one is against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. (Point fourteen). Seventh, a new trial was proper

because there was legally sufficient evidence of jury misconduct. (Point fifteen). Finally, a new trial was proper because there was legally sufficient evidence of newly discovered evidence. (Point sixteen).

Several arguments address the complaint that there is "no evidence" to support the jury's finding in response to question number one, that Nel Lucille Epperson Bannister, and her predecessors in interest have held peaceable and adverse possession of the land in controversy in this suit, for a consecutive period of ten years before December 18, 1980. In reviewing this contention the court must view the evidence in its most favorable light, considering only the evidence and inferences which support the findings of the jury, and rejecting the evidence and inferences which are contrary to the finding. *Butler v. Hanson,* 455 S.W.2d 942, 944 (Tex.1970); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to be found in the record supporting the jury's finding, then the verdict must be upheld and the judgment affirmed. *Id.*

While couched in terms of "insufficiency of the evidence," points two and three are directed at the trial court's refusal to grant a directed verdict and are properly treated as "no evidence" points. *Garza v. Alviar, supra* at 823.

While couched in terms of "insufficiency of the evidence," points nine and ten are directed at the trial court's refusal to render judgment n.o.v. and also are properly treated as "no evidence" points. *Id.*

First we note that there was evidence which tended to establish privity between appellees and their predecessors in interest. TEX.CIV.PRAC. & REM.CODE ANN. § 16.023, permits tacking of successive interests upon a showing of privity of estate between each holder and his successor. To show privity of estate with prior possessors, the adverse claimant merely has to show a transfer and delivery of possession from one possessor to the next. *McAnally v. Texas Co.,* 124 Tex. 196, 76 S.W.2d 997, 1001 (1934); *Sterling v. Tarvin,* 456 S.W.2d 529, 535 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

Defendants argue that if no claim of right by a predecessor in interest is shown, the adverse possessor cannot show privity of estate with the predecessor. *Brown v. McMahon,* 525 S.W.2d 553 (Tex. Civ.App.—Tyler 1975, no writ). The *Brown* case is inapposite because in that case the two prior possessors actually testified that they had never claimed any interest in the disputed tract while in possession of it. *Brown v. McMahon, supra* at 556. In this case there is significant evidence of a claim of right by predecessor Walker Epperson during his time of possession between 1954 and 1957. This evidence included the "chaining" operation using large bulldozers and chains, the tearing down and removing of a fence which crossed the disputed tract, and the building of a new fence across the disputed tract to connect the fence on the west side of the disputed tract, incorporating this fence into the perimeters of both the north and south pastures. In 1957, just before the transfer of possession to appellees, Walker Epperson drove appellees around the pastures and showed them his claimed boundaries, including the disputed land.

There was some evidence that the possession of appellees and their predecessors in interest of the disputed tract was exclusive. It was undisputed that no member of the predecessor Phillips or Fish families or any other person claiming land to the west of the fence had ever entered upon the disputed tract. Appellants assert that appellees' possession was not exclusive because appellants executed oil and gas leases and possibly easements which covered the disputed tract. However, no lessee or grantee ever actually entered the disputed premises under appellants' authority. The mere execution of written instruments such as leases and easements by a record owner does not interrupt the exclusive nature of the possession unless there is an ouster, and the ouster must be of such a character that it would put a reasonably prudent person on notice that he had been ousted. *Sterling v. Tarvin,* 456 S.W.

2d 529, 533–534 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

■ Evidence was offered which tended to show that appellees and their predecessors in interest at all times intended to claim all land within their fence pastures. Both appellees testified that they acquired and intended to acquire all land within the fences when they originally traded for the land, and had been claiming it ever since. Appellees obtained the land from Walker Epperson who represented that they would receive all land within the fence lines, indicating that he also claimed the land within the fences, including the disputed tract. Declarations of a person made while in possession of property are admissible to explain the nature and character of his possession. *Nagle v. Kübler*, 212 S.W.2d 1009, 1011 (Tex.Civ.App.—Galveston 1948, writ ref'd n.r.e.).

■ The actions of appellees and their predecessors through the years have been consistent with their intent to claim the land as their own. Appellant's contention that appellees could not formally intend to claim land unless they knew that such land was not part of their record title is without merit. This is the position urged by Justice Smith in his dissent in the case of *Butler v. Hanson*, 455 S.W.2d 942, 953 (Tex.1970). The court in *Butler* upheld the jury's verdict in favor of the adverse claimant, who claimed and used certain land, believing it to be part of his record titled property.

Appellees' claim is based on the ten year statute of limitations, TEX.CIV.PRAC. & REM.CODE ANN. § 16.026. Appellees were bound to prove the following elements: (1) actual possession of the land, (2) cultivation, use, or enjoyment of such land, (3) an adverse or hostile claim, and (4) an exclusive domination over the property and an appropriation of it for their own use and benefit for a period of at least ten years. *Ramirez v. Wood*, 577 S.W.2d 278, 287 (Tex.Civ.App.—Corpus Christi 1979, no writ).

■ Appellants base their claim of no evidence on the contention that there was no showing of an adverse or hostile claim

by appellees, and no showing of exclusive domination and appropriation. However, the evidence that appellees and their predecessors in interest have been in possession of the disputed tracts since 1935 is undisputed. It is also undisputed that appellees and their predecessors in interest have used and enjoyed the disputed tract since that time. Appellees' actions have proclaimed their intention to claim the disputed tract as their own, and the law recognizes that action exposes intention as decidedly as words. *Hoppe v. Sauter*, 416 S.W.2d 912, 915 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.).

Appellants rely on *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781 (1954) and its progeny for the proposition that there has been no evidence that appellees gave notice of a claim of right. However, the instant case is more nearly similar to *Butler v. Hanson*, 455 S.W.2d 942 (Tex. 1970). In *Butler*, the court declined to apply the exception announced in the *Orsborn* case based on four differences in the facts: (1) in *Orsborn*, cattle only occasionally strayed on to the disputed land, whereas in *Butler*, there was testimony that the disputed land was constantly used for grazing; (2) in *Orsborn* there was an unfenced tract that belonged to the State of Texas between the land unquestionably owned and that claimed by adverse possession so that the adverse possessor had to skip the unfenced tract to claim the 57 acres, while in *Butler* the tracts were contiguous and were operated as a unit; (3) in *Orsborn*, the adverse possessor simply made use of the fence somebody else built, while in *Butler* the adverse possessor made modifications to the fence which the court found to be evidence that he had made it his fence; and (4) in *Butler* the undisputed evidence was that this fence was the adverse possessor's fence, and that the general reputation in the community was that the property bound to that fence was his property. *Butler v. Hanson, supra* at 945–946.

Appellees and their predecessors in interest have provided evidence of a claim of right by their actions with respect to the land in their pastures. The instant case is

distinguished from *Orsborn* by the same elements mentioned by the court in *Butler v. Hanson:* (1) the disputed tract has been constantly used for grazing; (2) the disputed tract is contiguous to appellees' record title land, and fenced within it, and both tracts are operated as a unit; (3) appellee's ranch manager has rebuilt and replaced water-gapped portions of the fence, modified portions of the fence, and always maintained the fence on behalf of the appellees; (4) the general reputation in the community has always been that the disputed tract is part of the Moody–Bannister ranch and that the fence is the boundary with the Phillips–Fish Ranch.

In addition to the areas distinguished in *Butler* there are additional distinctions between the instant case and *Orsborn.* In our case the predecessor owner, Walker Epperson, built a new fence (changing its location from an old fence), effectively dividing the disputed tract, a portion being in the north pasture and a portion being in the south pasture. The new fence was attached to the existing fence separating the disputed tract from the Fish ranch. This action could have been interpreted as an adoption of the existing fence, claiming it as part of his boundary fencing system. In addition Walker Epperson drilled a water well and equipped it with a windmill and tank, on the record title land but in close proximity to the disputed tract. Finally, appellees granted and were paid for two pipeline rights of way across their titled property and the disputed tract. The pipelines were constructed across the disputed tract and appellees were paid for surface damages to the disputed property.

In *Pirtle v. Henry,* 486 S.W.2d 585 (Tex. Civ.App.—Tyler 1972, writ ref'd n.r.e.), the adverse claimants built a fence which had the effect of dividing the disputed land, and this action combined with building a gate and keeping it locked, rebuilding and keeping up the old fences, and running ten to twenty-five head of cattle was found to have constituted some evidence showing an open, visible and hostile claim so as to raise the presumption that the owner had notice that his rights were being invaded intentionally and with the purpose of asserting an adverse claim to the land. *Pirtle v. Henry, supra* at 590. The court in *Pirtle* specifically found that the cases of *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954) and *McDonnold v. Weinacht,* 465 S.W.2d 136 (Tex.1971) were distinguishable on the facts and not controlling. *Pirtle v. Henry, supra* at 590.

In this case the evidence showed that Walker Epperson, appellees' predecessor in interest, "chained" the property with bulldozers in the middle 50's, and removed one pasture fence and built another pasture fence in a different location. Evidence also showed the later repair, rebuilding, and modification of the fence by Rex Johnson as ranch manager for appellees. Additional evidence showed the clearing and harvesting of cedar in the 1960's by Buddy Epperson, appellees' lessee, and later by Rex Johnson, ranch manager.

■ Evidence was offered that appellees granted easements to Lovaca Gathering Co. for pipelines and collected payments for the right of way and surface damages. Evidence of other leasing activity by appellees included the leasing of their ranch to paying hunters with directions that they could hunt anywhere within the fences. Other evidence showed that appellees conveyed a year-to-year leasehold estate to Buddy Epperson and Orville Cowsert for the years 1957 to 1968, and then to Buddy Epperson alone from 1968 to 1970. Finally, the ranch was operated as a unit with the disputed tract. Where use and possession is open, visible to others, and of a positive character that would not permit an observer to be mistaken about the use of the land and its enclosure within a fence maintained by the adverse claimants, such use and possession constitutes some proof of a visible appropriation of the land by the adverse claimant. *Hoppe v. Sauter,* 416 S.W.2d 912, 915 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.).

In *Hoppe v. Sauter, supra* at 915, the successful adverse claimants incorporated the fence on the other side of the disputed tract into their own perimeter fence, so that it became a section of the fence enclos-

ing the entire tract claimed by them. In this case, Walker Epperson, by removing an existing cross fence and building a new fence in a new location, divided the disputed tract into two pastures, and adopted the west fence as the perimeter fence of both pastures. In *Caver v. Liverman,* 143 Tex. 359, 185 S.W.2d 417, 419 (1945), the Supreme Court found that connecting a new fence to an existing fence together with a combination of grazing and woodcutting is some evidence of adverse possession.

■ Appellants rely on the holding of *McDonnold v. Weinacht,* 465 S.W.2d 136 (Tex.1971), that a showing of designed enclosure is necessary when the only evidence of adverse use and enjoyment relied on by the adverse claimant is grazing. However, active and total use of the pasture grazing capacity to the exclusion of all others, with the claimant's livestock continuously present and visible evidences the required notice of the hostile claim. Under these circumstances a showing of designed enclosure is not necessary. *McShan v. Pitts,* 554 S.W.2d 759, 763 (Tex.Civ.App.— San Antonio 1977, no writ) *See* Justice Pope's concurring opinion in *McDonnold v. Weinacht.*

In *Orsborn v. Deep Rock Oil Corp., supra* 267 S.W.2d at 785, the court recognized an exception to the general rule in the situation where an adverse claimant relies only on grazing as his use, and yet does not show a sufficient enclosure. Appellants contend that this narrow "grazing only" exception should be applied to defeat appellees' visible appropriation and claim of right as to the subject land in their pastures.

When viewed in the light most favorable to the jury verdict the evidence in this case shows that, in addition to constant, continuous, heavy grazing and occasional overgrazing, appellees made other significant uses of the disputed tract. There were periodic harvests of cedar which was later sold. There were two pipeline easements sold by appellees across the disputed tract with payment being made to appellees on a "per rod" basis which included the distance across the disputed tract. There were two pipelines buried across the disputed tract with surface damages being paid to appellees. The second pipeline crew built terraces with appellees' authority, which aided in the control of erosion, and one of the terraces is plainly visible from the fence line. Appellees leased their pastures, including the disputed tract, to hunters and specifically authorized the hunters to occupy all land within the fences, including the disputed tract. Appellees also leased their pastures, including the disputed tract to Buddy Epperson and Orville Cowsert for grazing purposes. Appellees and Rex Johnson, with their authority, continually fed livestock on the disputed tract. These uses of the property constitute evidence of an open and hostile claim of right to the property. Since there is evidence of uses other than grazing, the "grazing only" exception does not apply, thereby eliminating the need for proof of a designed enclosure.

■ However, appellees did adduce proof indicating the disputed tract was designedly enclosed by appellees and their predecessors in interest: (1) the removal of a cross-fence; (2) the building of a new cross-fence in a new location and its connection to the existing fence; (3) the incorporation of the fence on the west side of the disputed tract into appellees perimeter fencing scheme for both the north and south pastures; (4) the chaining with bulldozers and large chains on the disputed tract by Walker Epperson around the parameter of his property; (5) the maintenance and rebuilding of the fence and water gaps; and (6) the modification of the fence. All these actions, when taken together and viewed in light of the reputation of the fence as the boundary between the properties, constitute some evidence of a designed enclosure and therefore some evidence of a visible appropriation of the disputed tract under a claim of right. *See Hoppe v. Sauter, supra* at 915.

We find that there is some evidence of probative force to support the jury's finding. Points one, two, three, four, eight, nine, ten and eleven are overruled.

We next address the complaint of [factually] "insufficient evidence" to support the jury's finding that Nel Lucille Epperson Bannister and her predecessors in interest have held peaceable and adverse possession of the land in controversy in this suit, cultivating, using or enjoying for a consecutive period of ten years prior to the filing of this suit, December 18, 1980.

The proper standard for review is that the court considers and weighs all the evidence in the case and sets aside the verdict if it concludes that the verdict is so contrary to the overwhelming weight of the evidence as to be manifestly unfair. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952).

 It is not enough to show that the verdict is merely contrary to the evidence. Rather the record must clearly show that the verdict is so contrary to the overwhelming preponderance of the evidence as to indicate that it is in fact the product of corruption, passion, and prejudice and that it is so wrong as to be unconscionable. *Royal v. Cameron*, 382 S.W.2d 335, 339 (Tex.Civ.App.—Tyler, 1964 writ ref'd n.r.e.). The recent case of *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986), reaffirms the standard. A Court of Appeals in reviewing factual sufficiency must detail the evidence and clearly state why the jury's finding is factually insufficient, why it shocks the conscience or clearly demonstrates bias. *Pool v. Ford Motor Co., supra* at 635.

 Appellants aver that appellees did not properly maintain the fence on the west side of the disputed tract during the entire period of limitations. The actual condition of the fence at a specific time during the period of limitation is not relevant because the "grazing only" exception requiring a designed enclosure applies only in cases where grazing is the sole use relied on by the adverse claimants. *McDonnold v. Weinacht, supra* at 142; *Orsborn v. Deep Rock Corp., supra* 267 S.W.2d at 785.

The jury considered substantial testimony on the subject of the condition of the fence at various times. Appellees' witnesses, William L. Bannister and Rex Johnson, testified that the fence was generally well maintained, partially re-built and modified by appellees, and used as a part of their pasture fencing arrangement, during the period of possession. Appellant's witness, Toby Fish testified that the fence was poorly maintained during the portion of the period of possession when he was familiar with it. Both sides introduced pictures, all admittedly taken after the lawsuit was filed, along with testimony that the pictures fairly and accurately reflected the fences general condition at relevant times during the period of limitations. The evidence concerning the fence condition, to the extent that it might be relevant, was fully developed and considered by the jury. This finding is not so contrary to the overwhelming weight of the evidence in this regard as to be manifestly unfair.

 Appellants claim appellees did not render the disputed tract for taxes until 1982, after the lawsuit was filed, and therefore plaintiffs failed to show a claim of right. The evidence did reflect that appellees had not specifically rendered the disputed property. The evidence on taxes does not appear to be determinative when viewed against the back drop of the activities of appellees, their ranch manager, Rex Johnson, their tenant, Buddy Epperson and predecessor in interest, Walker Epperson. The evidence regarding failure to render taxes was considered by the jury with all other relevant evidence. This finding is not against the great weight and preponderance of the evidence and thus not manifestly unfair. *In re King's Estate, supra* 244 S.W.2d at 661. There is no indication that the jury's decision is the product of corruption, passion, and prejudice or that it is so wrong as to be unconscionable. *Royal v. Cameron, supra* at 339.

We find that the evidence was factually sufficient to support the jury's finding and answer to question one. Points six, seven, twelve, thirteen, and fourteen are overruled.

Point of error four is that question two should not have been submitted to the jury, (regarding appellees' alternative pleading

that the fence line had been established as a boundary by acquiescence). Appellants say that there was no evidence as to doubt, uncertainty or dispute about the location of the fence on the west line of the disputed tract prior to the construction of such fence, and since there was no dispute or uncertainty, the parties never agreed between themselves as to the location of the line and the doctrine of acquiescence does not apply. *Great Plains Oil & Gas Co. v. Foundation Oil Co.*, 137 Tex. 324, 153 S.W.2d 452, 458–459 (1941); *Boothe v. Fuentes*, 262 S.W.2d 754, 755 (Tex.Civ.App.—San Antonio 1953).

The jury considered the evidence and found this point in favor of appellants. Therefore even if there were no evidence to support the submission of question two, appellants do not show harm resulting from such submission. The error, if any, is harmless because a submission of question two has not been shown to be reasonably calculated to cause nor did it probably cause rendition of an improper judgment. *First Employees Insurance Company v. Skinner*, 646 S.W.2d 170, 172 (Tex.1983); TEX.R.APP.P. 81(b)(1). Point four is overruled.

Point of error fifteen is based on alleged jury misconduct. The argument, however, relates to juror disqualification. No incident of jury misconduct is actually alleged in appellant's motion for new trial. Appellants did not allege or prove that any outside influence was brought to bear upon a juror resulting in an act of misconduct. Without proof of outside influence resulting in some act of jury misconduct which was material and resulted in harm, the trial court properly denied the motion for new trial. *Robinson Electric Supply v. Cadillac Cable Co.*, 706 S.W.2d 130 (Tex.App.—Houston [14th Dist.] 1986 writ ref'd n.r.e.).

The allegation of juror disqualification was not made in defendant's motion for new trial. By failing to raise the issue of juror disqualification at the trial level appellant has waived his complaint. TEX.R.CIV.P. 321; TEX.R.APP.P. 52.

Moreover, the testimony relating to this point does not necessarily indicate that a juror was biased or prejudiced. There is no showing that juror Candy Shanklin did not arrive at her opinion as a result of the evidence and arguments in the case. When the trial court does not find disqualification, the standard of review is to consider the evidence in the light most favorable to upholding the trial court. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963). In applying this standard, we find the evidence does not prove juror disqualification. Point fifteen is overruled.

Finally, it is argued the trial court should have granted a new trial on the basis of newly discovered evidence. The elements necessary to obtain a new trial on the basis of newly discovered evidence are:

(1) Admissible, competent evidence must be introduced on the hearing of the motion for new trial showing the existence of the newly discovered evidence relied upon;

(2) Moving party must show that neither the party nor attorney had any notice of the existence of such evidence prior to the time of trial;

(3) Moving party must show that due diligence had been used to procure the evidence prior to trial;

(4) Moving party must show that the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversaries;

(5) Moving party must show that the evidence would probably produce a different result if a new trial were granted.

*Godwin v. Pate*, 667 S.W.2d 201, 205 (Tex. App.—Dallas, 1983, writ ref'd n.r.e.); *Jacobi v. Texas State Board of Medical Examiners*, 308 S.W.2d 261, 265 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.).

Their claim of newly discovered evidence is based on the testimony of Billie Ruth Hodges regarding the condition of the fence between the two ranches in December 1980. The proof showed that appellants had notice of the existence of such evidence prior to trial. Hodges is the sister

of appellant Toby Fish; she testified that Toby Fish was with her at the time she observed the fence, indicating that prior to trial appellants had some knowledge of the fence's condition. Thus, there was no showing of due diligence in attempting to procure the evidence. Further, evidence is cumulative to the testimony of Toby Fish regarding the condition of the fence. There is no showing that the evidence would probably produce a different result if a new trial were granted.

Furthermore, it is within the sound discretion of the trial judge to grant a new trial upon newly discovered evidence and, unless an abuse of discretion is shown, the decision will not be disturbed on appeal. *Godwin v. Pate, supra* at 205. Appellants have shown no abuse of the trial court's discretion in denying the motion for new trial. Appellant's point of error sixteen is overruled.

The judgment is affirmed.