In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00172-CR
______________________________


LARRY RAY TOWNSEND, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 32347-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Appellant, Larry Ray Townsend, has filed with this Court a motion to withdraw his notice
of appeal and dismiss his pending appeal in this matter pursuant to Rule 42.2(a) of the Texas Rules
of Appellate Procedure. See Tex. R. App. P. 42.2(a). The motion is signed by Townsend and his
counsel. 
            We grant Townsend's motion and dismiss the appeal. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          January 24, 2006
Date Decided:             January 25, 2006

Do Not Publish



-top: 25px;
 padding: 6px;
 line-height: normal
}

span.WPNormal
{
 font-family: "Arial", sans-serif;
 font-size: 12pt;
 font-weight: normal;
 font-style: normal;
 font-variant: normal;
 text-align: left;
 text-decoration: none;
 color: black;
 vertical-align: middle;
 text-indent: 0in
}

body
{
 font-family: "Arial", sans-serif;
 font-size: 12pt;
 font-weight: normal;
 font-style: normal
}

















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00081-CV
______________________________


CARRIE BETTS, Appellant
 
V.
 
HERMON REED, JR., Appellee


                                              

On Appeal from the 6th Judicial District Court
Red River County, Texas
Trial Court No. 002CV00116


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          This appeal arises from a dispute between two landowners, Carrie Betts and
Hermon Reed, Jr., over a narrow road running across Betts' property and leading to Reed's
property. This road is located in Red River County and is sometimes known as Tyson
Road.


 Contending the road had been a public road for at least ninety years, Reed filed
a declaratory judgment action against Betts concerning the status of Tyson Road and
sought damages for the denial of its use. The trial court found Tyson Road had been
impliedly dedicated to public use, abandoned, and then acquired by Reed through
prescription. Betts contends the evidence is legally and factually insufficient to support the
finding that Reed established a private easement by prescription and to support the
damages awarded. In response, Reed contends the evidence is sufficient to support the
trial court's judgment under three separate theories: implied dedication, public prescription,
or a private prescription. We affirm the trial court's judgment in part and reverse in part. 
There is sufficient evidence Tyson Road had been impliedly dedicated to public use, but
the evidence is legally insufficient that it had been abandoned.
Factual Background
          Several witnesses testified this narrow gravel road has been used by the public
since at least the 1920s. At one time, several families used Tyson Road to access their
homes. Permission was never sought from anyone, and there were no restrictions on who
could use the road.  
          In 1964, Reed purchased 105 acres along Tyson Road, which is most of the
property now accessible by that road. Initially, Reed paid taxes on only 103 acres because
the county estimated that Tyson Road occupied the remainder of the acreage. However,
the county's taxing authority started collecting taxes for the entire 105 acres eight to ten
years ago. Reed uses his property primarily to graze cattle and to lease for deer hunting. 
Reed testified he has used Tyson Road continuously since 1964. He never asked
permission to use the road. At some time, not shown by the record, a gate was erected
across the road at some location, again not shown by the record, but apparently before
reaching Reed's property. 
          Betts acquired her property along Tyson Road in 1990. She testified that she
wanted to build a new house on the site of the road and that she had offered Reed an
alternative route, which he refused to accept. Betts further testified she was aware before
the acquisition of her property that Reed used Tyson Road. 
          Approximately one year before trial, Reed began to experience problems using the
road. Although he had an alternative route through a neighbor's property to access his
property, the alternative route was more difficult and much longer. Despite a temporary
restraining order against Betts, the gate across the road was locked and debris was left on
the road to inhibit its use. 
          Following a bench trial, the court found Tyson Road had been a public road that was
abandoned for twenty years or more. The court further found that Reed had perfected a
prescriptive easement. The court awarded damages of $6,950.00 and attorney's fees in
the amount of $6,250.00 to Reed. Last, the court permanently enjoined Betts from
interfering with Reed's use of the road and barred her from entry onto the road. 
Standard of Review
          We review de novo the trial court's legal conclusions. State v. Heal, 917 S.W.2d
6, 9 (Tex. 1996); Cherokee Water Co. v. Freeman, 33 S.W.3d 349, 353 (Tex.
App.—Texarkana 2000, no pet.). Although Betts requested findings of fact, the record
contains no such findings and no notice of past due findings. "The failure to file a notice
of past due findings of fact waives the right to complain about the trial court's failure to file
findings of fact and conclusions of law." Curtis v. Comm'n for Lawyer Discipline, 20
S.W.3d 227, 232 (Tex. App.—Houston [14th Dist.] 2000, no pet.); see Ohio Cas. Group
v. Risinger, 960 S.W.2d 708, 712 (Tex. App.—Tyler 1997, writ denied); see also Tex. R.
Civ. P. 297.
          In the absence of findings of fact and conclusions of law, we imply that the trial court
found all facts necessary to support its judgment as long as they also are supported by the
evidence. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002). 
However, those implied findings may be challenged on appeal for legal and factual
sufficiency where the appellate record includes the reporter's and clerk's records. Id. We
note that complaints concerning the sufficiency of the evidence in a nonjury trial may be
made for the first time on appeal. Tex. R. App. P. 33.1(d); Tex. R. Civ. P. 324; Regan v.
Lee, 879 S.W.2d 133, 135 (Tex. App.—Houston [14th Dist.] 1994, no writ); see Kissman
v. Bendix Home Sys., Inc., 587 S.W.2d 675, 677–78 (Tex. 1979).
          When deciding a legal sufficiency point concerning a fact issue, we must consider
all the evidence in the record in the light most favorable to the party in whose favor the
verdict has been rendered, and we must apply every reasonable inference that could be
made from the evidence in that party's favor. Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997); Pilgrim's Pride Corp. v. Smoak, 134 S.W.3d 880, 888 (Tex.
App.—Texarkana 2004, pet. denied). We disregard all evidence and inferences to the
contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v.
Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). A no-evidence point will be
sustained when: (a) there is a complete absence of evidence of a vital fact; (b) the court
is barred by rules of law or evidence from giving weight to the only evidence offered to
prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla of
evidence exists if the evidence furnishes some reasonable basis for differing conclusions
by reasonable minds about the existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire
Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
          When considering a factual sufficiency challenge to a jury's verdict, a court of
appeals must consider and weigh all of the evidence, not just the evidence supporting the
verdict. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of
appeals may set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence that the verdict is clearly wrong and unjust. Id. at 407; Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986). The court of appeals is not a fact-finder. Accordingly, the court of
appeals may not pass upon the witnesses' credibility or substitute its judgment for that of
the jury, even if the evidence would clearly support a different result. Mar. Overseas Corp.,
971 S.W.2d at 407. If we find the evidence insufficient, we must clearly state why the jury's
finding is factually insufficient or is so against the great weight and preponderance of the
evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986). 
Tyson Road Was Impliedly Dedicated As a Public Road
          Legally and factually sufficient evidence supports the trial court's finding that Tyson
Road had become a public road through implied dedication. Since the origin of the road
is "shrouded in obscurity," the long and continuous use of the road by the public creates
a presumption of dedication. No evidence was introduced to rebut this presumption.
          A property owner, under the common law, can either expressly or impliedly make
known his or her intention to dedicate.


 The essential elements of implied dedication are: 
(1) the acts of the landowner induced the belief that the landowner intended
to dedicate the road to public use; (2) [the landowner] was competent to do
so; (3) the public relied on these acts and will be served by the dedication;
and (4) there was an offer and acceptance of the dedication.

Lindner v. Hill, 691 S.W.2d 590, 592 (Tex. 1985) (quoting Las Vegas Pecan & Cattle Co.
v. Zavala County, 682 S.W.2d 254, 256 (Tex. 1984)); see Machala v. Weems, 56 S.W.3d
748, 760 (Tex. App.—Texarkana 2001, no pet.); Stein v. Killough, 53 S.W.3d 36, 43 (Tex.
App.—San Antonio 2001, no pet.). The determination of whether a public right-of-way has
been acquired by dedication is a question of fact. Lindner, 691 S.W.2d at 591; Graff, 947
S.W.2d at 635. 
          As a general rule, the manifestation of an intent to dedicate must be something
more than an omission, failure to act, or acquiescence on the part of the owner. Greenway
Parks Home Owners Ass'n v. City of Dallas, 159 Tex. 46, 312 S.W.2d 235, 241 (1958);
Gutierrez v. County of Zapata, 951 S.W.2d 831, 839 (Tex. App.—San Antonio 1997, no
writ). "In order to constitute dedication by estoppel or implication there must exist a clear
and unequivocal intention on the part of the landowner to dedicate the same to public use
and an acceptance thereby by the public." Greenway Parks Home Owners Ass'n, 312
S.W.2d at 241. There must be some evidence in addition to the owner's acquiescence that
implies a donative intent. Long Island Owner's Ass'n v. Davidson, 965 S.W.2d 674, 681
(Tex. App.—Corpus Christi 1998, pet. denied). The additional evidence may include, but
is not limited to: (1) permitting public authorities to grade, repair, or otherwise improve the
roadway; (2) selling parcels of land from a plat or plan showing the roadway as a means
of access to the parcels; (3) construction of facilities for general public use; (4) an express
representation by the owner of a road to a land purchaser that the way is reserved for
public use; (5) fencing off the roadway from the remainder of the land; or (6) obtaining a
reduction in the purchase price commensurate with the area of the roadway. Id. Direct
evidence of a landowner's intent is not required. Supak v. Zboril, 56 S.W.3d 785, 790
(Tex. App.—Houston [14th Dist.] 2001, no pet.); see Owens v. Hockett, 151 Tex. 503, 251
S.W.2d 957, 958–59 (1952) (affirmed jury finding of implied dedication where road had
been used by public for many years, landowner was aware of public use, county had
repaired and graded road, and property along roadway was fenced); see also Malone v.
Whitfield, 621 S.W.2d 192, 195 (Tex. Civ. App.—Waco 1981, writ ref'd n.r.e.) (affirming
finding of implied dedication when public used road for thirty-five years, county maintained
road, and road was delineated by fences). Evidence that the public had used the road, the
county had maintained the road, and the road had been fenced on both sides was
introduced at trial.



          The long and continuous use of the road by the public raises a presumption of
donative intent. When the origin of the road cannot be determined, evidence of long and
continued use by the public raises a presumption that the landowner intended to dedicate
the road. O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878, 882 (1960); Reed v. Wright,
155 S.W.3d 666, 672 (Tex. App.—Texarkana 2005, pet. filed); Supak, 56 S.W.3d at 790;
Graff, 947 S.W.2d at 637; Fazzino v. Guido, 836 S.W.2d 271, 274 (Tex. App.—Houston
[1st Dist.] 1992, writ denied). For this presumption to apply, the ownership of the land
when the road originated must be "shrouded in obscurity" so that no evidence of the intent
of the owner is available. O'Connor, 339 S.W.2d at 882; Reed, 155 S.W.3d at 672; Supak,
56 S.W.3d at 790; Graff, 947 S.W.2d at 637; Fazzino, 836 S.W.2d at 274. 
          The origin of Tyson Road is "shrouded in obscurity," and no evidence of the intent
of the owner who established the road was introduced. There was legally and factually
sufficient evidence of long and continuous use by the public. Although Reed did not
establish that the road had been used for ninety years, he did present evidence the road
had been used since the 1920s. Algie Rose, who was eighty-one years old at the time of
trial, testified he remembered using Tyson Road since the late 1920s or early 1930s. Rose
testified he never asked permission to use the road. Reed, who was sixty-nine at the time
of trial, testified he had used Tyson Road since he was a child. Reed testified he had
owned property along Tyson Road since 1964 and had used Tyson Road to access his
property since that time. Betts acknowledged she had never given Reed permission to use
Tyson Road. Although he had not used Tyson Road recently, Shepard Sanders, who was
sixty-six years old at the time of trial, stated he had occasionally traveled up and down
Tyson Road since he was fifteen. Sanders testified that several families had lived on the
road in the past and that everybody used Tyson Road. Sanders testified he had used
Tyson Road to haul hay. Josie Reed, who was eighty years of age at the time of trial,
testified she has used Tyson Road since she was in her teens. Josie Reed testified that
everyone considered the road a public road and that she had never asked permission to
use the road. Reed and Rose also testified that the Cook, Houston, Walker, and Ford
families used Tyson Road in the late 1940s to access their property. 
          When viewed in a light most favorable to the verdict, more than a scintilla of
evidence exists that the public used Tyson Road for a long and continuous time. When
viewed in a neutral light, the great weight and preponderance of the evidence does not
indicate that the trial court's finding was clearly wrong or unjust. Because the origin of the
road is shrouded in obscurity, the evidence of long and continued use by the public raises
a presumption that the landowner intended to dedicate the road.


 Betts presented no
evidence disputing the presumption of implied dedication. The evidence is legally and
factually sufficient to support the trial court's finding that Tyson Road had been impliedly
dedicated as a public road.Trial Court Erred In Concluding Tyson Road Had Been Abandoned
          The trial court found Tyson Road had been abandoned more than twenty years ago. 
If Tyson Road is a public road, Betts contends the road remains a public road because it
is still being used for the same purpose for which it has been used in the past. We agree. 
The evidence is legally insufficient that Tyson Road had been abandoned.
          A landowner cannot revoke the dedication or use the property contrary to the
original purpose of the dedication once a dedication is accepted. See Lindner v. Hill, 673
S.W.2d 611, 616 (Tex. App.—San Antonio 1984), aff'd, 691 S.W.2d 590 (Tex. 1985);
Moody v. White, 593 S.W.2d 372, 378 (Tex. Civ. App.—Corpus Christi 1979, no writ);
Edmiston v. City of Harlingen, 347 S.W.2d 742, 744–45 (Tex. Civ. App.—San Antonio
1961, writ ref'd n.r.e.). "Once a road is dedicated to public use, that road remains subject
to that use unless it is abandoned." Lindner, 691 S.W.2d at 592. 
          There is no evidence Tyson Road had been abandoned. Neither statutory
abandonment nor common-law abandonment has been shown. Further, there is no
evidence the commissioner's court has formally ordered that Tyson Road is abandoned. 
See Tex. Transp. Code Ann. § 251.051 (Vernon 1999). 
          There is no evidence of statutory abandonment pursuant to the Transportation
Code. Section 251.057 of the Transportation Code provides:
(a)A county road is abandoned when its use has become so
infrequent that one or more adjoining property owners have enclosed the
road with a fence continuously for at least 20 years. The abandoned road
may be reestablished as a public road only in the manner provided for
establishing a new road.
 
(b)This section does not apply to: 
 
(1)a road to a cemetery; or 
 
(2)an access road that is reasonably necessary to reach
adjoining real property.

Tex. Transp. Code Ann. § 251.057 (Vernon 1999). There is no evidence Tyson Road has
been enclosed with a fence continuously for at least twenty years.



          The evidence at trial does not support a finding of common-law abandonment,
either. To show common-law abandonment, one must show intent to abandon and acts
of relinquishment. Maples v. Henderson County, 259 S.W.2d 264, 267 (Tex. Civ.
App.—Dallas 1953, writ ref'd n.r.e.). "Common-law abandonment 'occurs when the use
for which property is dedicated becomes impossible, or so highly improbable as to be
practically impossible, or where the object of the use for which the property is dedicated
wholly fails.'" Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74, 77 (1936); Rutledge v. Staner,
9 S.W.3d 469, 471 (Tex. App.—Tyler 1999, pet. denied). There is no evidence that the
purpose of Tyson Road has become practically impossible or that the object of the use for
which the property was dedicated has wholly failed. "The purpose of a public road,
particularly one of local character, is to provide access to property abutting upon it, as well
as a thoroughfare between distant points." Rutledge, 9 S.W.3d at 471; Compton v.
Thacker, 474 S.W.2d 570, 574 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.). Although
the number of landowners who use Tyson Road has decreased, the road is still being used
to access property abutting it. Tyson Road has not lost its purpose as a public road and,
thus, common-law abandonment has not occurred.
          We note that the county ceased maintaining Tyson Road years ago. However, the
county's failure to maintain a road does not establish common-law abandonment. 
Rutledge, 9 S.W.3d at 472; Compton, 474 S.W.2d at 574. We also note fewer families
now use Tyson Road to access abutting property. Mere nonuse is not sufficient to
constitute abandonment. Compton, 474 S.W.2d at 574.
          Even when viewed in a light most favorable to the trial court's ruling, there is no
more than a scintilla of evidence Tyson Road had been abandoned. Therefore, the
evidence is legally insufficient to support the trial court's finding of abandonment. 
Damages
          In her third point of error, Betts contends the evidence is insufficient to support the
damages awarded to Reed. The judgment awarded damages as follows:
(1) $600.00 for lost deer lease; (2) $1,000.00 for the time expended by
Plaintiff; (3) $350.00 for Plaintiff's lost wages; and (4) $5,000.00 for or [sic]
loss of use and denial of access to the road, for a total of Six Thousand, Nine
Hundred and Fifty Dollars ($6,950.00).

The trial court also awarded $6,250.00 in attorney's fees for trial, plus $5,000.00 if the case
was appealed to the court of appeals and $3,500.00 if appealed to the Texas Supreme
Court.


 Betts challenges the award of the damages for the loss of the deer lease, for the
additional time expended by Reed, for the additional wages paid to Reed's employees, and
for the loss of use of Tyson Road. 
          During the time Reed was experiencing problems using the road, he had an
alternative route through a neighbor's property to access his property. The alternative
route, however, was more difficult and much longer. On May 6, 2002, the trial court issued
a temporary restraining order that required Betts to allow Reed to use Tyson Road. 
Despite this court order, the gate was locked and debris was left on the road to inhibit its
use. After the restraining order had been signed, the gate continued to be locked. 
Presumably to discourage use of the road, someone placed various items of debris—such
as bed springs, a mattress, and a toilet—on the road. Reed testified that, although he
would clean up the road, someone would put more trash on it. At least some of the debris
was placed after the temporary restraining order was issued. In addition, someone cut
approximately nine-tenths of the way through a tree located next to the road. Reed
testified the wind could have blown it over. Because the tree posed a serious potential
danger to anyone using the road, Reed testified he cut it down. 
          Betts challenges all of the damages on the basis that Reed did not have a right to
use Tyson Road. As discussed above, Tyson Road is a public road and Reed had a right
to use the road. Further, the temporary restraining order provided that Betts was prohibited
from denying Reed the right to use Tyson Road. Generally, damages for wrongful
deprivation of the enjoyment of an easement are recoverable for the deprivation or
hindrance of use of an easement. See Seelbach v. Clubb, 7 S.W.3d 749, 759 (Tex.
App.—Texarkana 1999, pet. denied); Hall v. Robbins, 790 S.W.2d 417, 418 (Tex.
App.—Houston [14th Dist.] 1990, no writ); Handal v. Cobo & Dosal, 225 S.W. 67, 69 (Tex.
Civ. App.—San Antonio 1920, writ ref'd). Similarly, damages for the denial of access to
a public road can be awarded. Because Reed was denied access to Tyson Road and had
a right to access Tyson Road, the trial court could award damages.
          Betts also contends the damages are inappropriate because there is no evidence
she was the person who denied access to Tyson Road. Betts testified she owns the
property over which the road runs. She further testified she does not know who locked the
gate and does not know who has the key. Reed testified that, although he did not observe
Betts locking the gate, she or her mother would be at the gate about ninety percent of the
time when he passed through. Because Betts owned the property along Tyson Road and
monitored the locked gate, the trial court could reasonably conclude Betts was the person
who locked the gate.
          The trial court did not err in awarding damages for the deer lease. Betts argues that
any cause of action concerning the loss of the deer lease belongs to the person who was
prevented from hunting, rather than Reed. Loss of rental value is an appropriate form of
damages when a property is normally used for rental purposes. See City of Longview v.
Stewart, 66 S.W.2d 450, 451 (Tex. Civ. App.—Texarkana 1933, no writ). Reed testified
he was unable to lease the property because Betts denied access. The trial court did not
err in awarding the loss of the rental value of the property. In addition, Betts argues the
deer lease was worth only $400.00. We note Jerry Doyle testified he paid Reed $400.00
for the deer lease. However, Reed testified the deer lease was worth approximately
$600.00. Even though the actual lease may have been less than the fair market value, the
evidence is sufficient to support the trial court's award of $600.00 as the fair market value
of the deer lease.
          The evidence is also sufficient to support the damage award for the additional time
expended by Reed's employees. Betts characterizes the lost wages as damages for the
repair of the road. Betts contends that, because some of the repairs were made before
Reed was denied access to the road, the award should be prorated from the time of Reed's
use to the date the road was closed. However, the award of $350.00 was based on the
amount of time Reed's employees wasted by having to use an alternative route, not for the
amount of time spent in repairing or cleaning up the road. Reed testified he had to pay his
employees approximately fifty hours of extra time because they had to take an alternative
route. Reed estimated the additional wages of his employees at $350.00, i.e., fifty hours
at $7.00 per hour. The award of lost wages referred to the cost of taking an alternative
route.
          In addition, the evidence is sufficient to affirm the damages awarded to Reed for his
personal time. Reed testified his alternative route through a neighbor's property cost him
personally between seventy-five to one hundred hours of additional time. Reed testified
he paid his ranch hands between $8.00 and $10.00 per hour. The trial court could have
reasonably inferred that Reed's time was worth at least as much as the amount he paid his
employees. Therefore, the trial court's award of $1,000.00 for Reed's personal time, which
was roughly equivalent to 100 hours of work at $10.00 an hour, was supported by the
evidence. 
          The trial court erred, however, in awarding $5,000.00 for the "loss of use" of Tyson
Road. There is no evidence Reed sustained $5,000.00 in damages in addition to the other
specified damages. While Reed did testify he had sustained other damages, such as
being forced to clean up the trash on the road and removing the tree which posed a
danger, he provided no testimony as to the value of these damages. Further, Reed never
testified his total damages amounted to almost $7,000.00.


 We find the evidence legally
insufficient to support the award of $5,000.00. Further, that award would result in a double
recovery. A double recovery exists when a plaintiff obtains more than one recovery for the
same injury. Waite Hill Servs., Inc. v. World Class Metal Works, Inc., 959 S.W.2d 182,
184–85 (Tex. 1998); see Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 (Tex. 1991). 
"The one satisfaction rule provides that a party which suffers but one injury can recover
only one satisfaction for damages arising from that injury." El Paso Natural Gas Co. v.
Berryman, 858 S.W.2d 362, 364 (Tex. 1993). The damages relating to Reed's loss of the
deer lease, the loss of Reed's personal time, and the additional wages paid to his
employees all resulted from the loss of use of Tyson Road. The $5,000.00 damage award
compensates Reed more than once for the specified damages discussed above. Because
there is no evidence supporting the $5,000.00 award and because that award would result
in a double recovery, the trial court erred in awarding $5,000.00 for the loss of use of Tyson
Road.
          The evidence is legally and factually sufficient to support the award of $600.00 for
the deer lease, the award of $1,000.00 for the personal time expended by Reed, and the
award of $350.00 for the additional wages Reed paid his employees. However, the
evidence is legally insufficient concerning the award of $5,000.00, and that award would
result in a prohibited double recovery.
Conclusion
          There is sufficient evidence to support the trial court's finding that Tyson Road had
been impliedly dedicated as a public road. The evidence is legally and factually insufficient
to support the finding that Tyson Road had been abandoned. We affirm the trial court's
finding that Tyson Road is a public road, but reverse and render judgment that Tyson Road
had not been abandoned. We also affirm the permanent injunction prohibiting Betts from
interfering with Reed's access, but reverse the permanent injunction prohibiting Betts from
using Tyson Road. Because Tyson Road is still a public road, Betts has the right to use
the road. We also strike the award of $5,000.00 for "loss of use and denial of access to
the road," but affirm the remainder of the damages totaling $1,950.00, as well as the award
of attorney's fees.
          We affirm the judgment in part and reverse and render in part in accordance with
this opinion.


                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      April 27, 2005
Date Decided:         May 27, 2005